<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| HARVARD SECURED CREDITORS LIQUIDATION TRUST, | : : : : Civ. No. 07-305 (GEB) |
| Appellant, | : : **MEMORANDUM OPINION** |
| v. | : : |
| INTERNAL REVENUE SERVICE, | : : |
| Appellee. | : : : |

<u>**BROWN, Chief Judge**</u>

    This matter comes before the Court upon the appellant Harvard Secured Creditors Liquidation Trust's ("the Trust" or "Appellant") appeal of the Bankruptcy Court's October 20, 2006 decision concerning the Trust's motion for a determination of its right to a tax refund. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a). The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will affirm in part and reverse in part the Bankruptcy Court's October 20, 2006 decision.

**I.     BACKGROUND**

    On or about January 15, 2002, Harvard Industries, Inc. ("Harvard") and two of its subsidiaries (collectively "the Debtors") filed voluntary petitions for relief pursuant to Chapter 11

1

of the Bankruptcy Code.  On or about June 24, 2003, the Debtors filed a motion pursuant to 11 U.S.C. § 505 requesting a determination of Harvard's right to a tax refund.  (Bankruptcy Court Opinion (October 20, 2006) ("Bankr. Op.") at 2.)  The Debtors sought a refund based on different types of expenses, including payments for workers compensation insurance policies.  (*Id.*)  Prior to the Bankruptcy Court's decision of that motion, the Debtors' Chapter 11 plan was confirmed, and the Trust became the party in interest.  (*Id.*)

On March 24, 2005, the Bankruptcy Court granted the refund request with respect to certain of Harvard's expenses, but denied without prejudice the motion with respect to the workers compensation expenses.  (Bankruptcy Court Order (March 24, 2005) at 2.)  The Trust appealed the Bankruptcy Court's decision, and on September 27, 2005, this Court reversed the decision with respect to those other expenses.  (Order (September 27, 2005) at 1.)  The Court remanded the case to the Bankruptcy Court to decide the remaining issues concerning Harvard's workers compensation expenses.  (*Id.*)

On July 6, 2006, the Bankruptcy Court conducted a hearing concerning the workers compensation expenses that Harvard paid to its insurer, Wausau Insurance Company ("Wausau"), during the 1995 tax year.  (Bankr. Op. at 3.)  On October 20, 2006, the Bankruptcy Court issued its decision concerning whether Harvard was allowed to carry back those expenses to the 1985 tax year pursuant to 26 U.S.C. § 172(f)(1)(B) (prior to the 1998 amendment of that provision).  The court held that Harvard was allowed to carry back the payments that it made for certain adjustments to its retrospective workers compensation insurance policies.  (*Id.* at 6.)  The court held, however, that Harvard could not carry back the administrative expenses that it was charged by Wausau with respect to those policies.  (*Id.* at 10-11.)  Finally, the court held that any

2

carryback losses that Harvard deducted should be offset by the amount allocable to Doehler-Jarvis, Inc. ("Doehler-Jarvis"), which joined Harvard in filing a consolidated return for the 1995 tax year but not for the 1985 tax year. (*Id.* at 13.) The Bankruptcy Court issued its order on November 14, 2006.

On January 19, 2007, the Trust filed the present appeal. It seeks reversal of the Bankruptcy Court's decision in two respects. First, the Trust argues that the court erred in concluding that Harvard was not allowed to deduct the administrative expenses that it paid to Wausau during the 1995 tax year. (Appellant Br. at 13-23.) Second, it argues that the court also erred in concluding that any additional losses that Harvard carries back should be reduced by Doehler-Jarvis's share of the applicable net operating loss – approximately one-third – pursuant to the loss allocation provisions of the regulations governing consolidated returns. (*Id.* at 23-30.) The Internal Revenue Service ("IRS" or "Appellee") argues that the Bankruptcy Court's decision should be upheld with respect to those two issues. In addition, the IRS argues that the court erred in concluding that Harvard is allowed to carry back the retrospective adjustments for its workers compensation insurance policies with Wausau. (Appellee Br. at 21-25.)

## II.    DISCUSSION

### A.    Standard of Review

Bankruptcy Rule 8013 provides that the district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ." Fed. R. Bankr. P. 8013. A factual finding is clearly

erroneous only where "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). A bankruptcy court's conclusions of law, on the other hand, are reviewed *de novo*. *Id.* Where mixed questions of law and fact are presented, the appropriate standard must be applied to each component of the appeal. *Id.*

> B. **Whether the Retrospective Insurance Payments that Harvard Made to Wausau During the 1995 Tax Year Are Deductible**

The Internal Revenue Code ("IRC") allows "a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year." 26 U.S.C. § 172(a). "In the case of a taxpayer which has a specified liability loss (as defined in subsection (f)) for a taxable year, such specified liability loss shall be a net operating loss carryback to each of the 10 taxable years preceding the taxable year of such loss." 26 U.S.C. § 172(b)(1)(C).

Prior to the 1998 amendments to Section 172, and during the 1995 tax year, "specified liability loss" was defined by 26 U.S.C. § 172(f)(1)(B) as:

> Any amount (not described in subparagraph (A)) allowable as a deduction under this chapter with respect to a liability which arises under a Federal or State law or out of any tort of the taxpayer if –
>
> (i) in the case of a liability arising out of a Federal or State law, the act (or failure to act) giving rise to such liability occurs at least 3 years before the beginning of the taxable year, or
>
> (ii) in the case of a liability arising out of a tort, such liability arises out of a series of actions (or failures to act) over an extended period of time a substantial

>portion of which occurs at least 3 years before the beginning of the taxable year.
>
>A liability shall not be taken into account under subparagraph (B) unless the taxpayer used an accrual method of accounting throughout the period or periods during which the acts or failures to act giving rise to such liability occurred.

26 U.S.C. § 172(f)(1)(B) (amended 1998).

Harvard maintained its accounting on an accrual basis. Under an accrual method of accounting, "a liability is incurred, and generally is taken into account for Federal income tax purposes, in the taxable year in which all the events have occurred that establish the fact of the liability, the amount of the liability can be determined with reasonable accuracy, and economic performance has occurred with respect to the liability." 26 C.F.R. § 1.446-1(c)(ii)(A). "[I]n determining whether an amount has been incurred with respect to any item during any taxable year, the all events test shall not be treated as met any earlier than when economic performance with respect to such item occurs." 26 U.S.C. § 461(h)(1).

The parties do not dispute that premiums paid for insurance policies covering workers compensation are "a liability arising under a Federal or State law," and that they may therefore be treated as a specified liability loss. The applicability of Section 172(f)(1)(B) to premiums paid for workers compensation insurance is supported by separate provisions that govern when such liabilities become deductible. Section 461(h)(2)(C) states that "[i]f the liability of the taxpayer requires a payment to another person and . . . arises under any workers compensation act, . . . economic performance occurs as the payments to such person are made." 26 U.S.C. § 461(h)(2)(C). Moreover, 26 C.F.R. § 1.461-4(g)(5) provides that "[i]f the liability of a taxpayer arises out of the provision to the taxpayer of insurance, . . . economic performance occurs as payment is made to the person to which the liability is owed." 26 C.F.R. § 1.461-

5

4(g)(5).  Several examples provided in Section 1.461-4(g)(8) offer further support that premiums paid for workers compensation insurance are deductible.  *See* 26 C.F.R. § 1.461-4(g)(8) (examples 5-7).

The parties dispute, however, whether the retrospective insurance payments that Harvard made to Wasau during the 1995 tax year should also be treated as a "specified liability loss" pursuant to Section 172(f)(1)(B).

### 1.   Harvard's Retrospective Adjustments to Its Payments to Wausau

During the Bankruptcy Court's July 6, 2006 hearing, the Trust presented the testimony of David A. White, who served in various positions at Harvard since 1995, including president, chief financial officer, secretary, assistant general counsel, and general counsel.  (Bankr. Op. at 3.)  At or around the time of the hearing, Mr. White was serving as a consultant to the Trust.  (*Id.*)

From 1988 to 1992, Harvard and its subsidiaries maintained workers compensation and general liability policies from Wausau.  (*Id.*)  Mr. White testified that the Wausau policies were "retrospective insurance plans."  (*Id.*)  According to the Bankruptcy Court, "[u]nder such plans, yearly premiums are based on the insured's actual loss experienced during the policy term."  (*Id.*)  "Harvard was required to pay an initial premium at the beginning of the policy year, which functioned as both a standard insurance payment and as a prepayment designed to cover anticipated claims under the policies."  (*Id.* at 3-4.)  "Harvard was sometimes required to pay additional premiums based on the number of claims Wausau paid during the policy year."  (*Id.* at 4.)  "Wausau routinely made these retrospective adjustments approximately six months after the

6

end of policy years." (*Id.*) According to the Bankruptcy Court, "the retrospective adjustments relevant to the refund request at issue were sent to Harvard around October 1995." (*Id.*) "Wausau and Harvard then commenced negotiations and ultimately came to an agreement as to the appropriate adjustments in early 1996." (*Id.*) The parties do not challenge these facts.

The IRS challenges, however, the Bankruptcy Court's finding that the retrospective plan adjustments that Wausau sent to Harvard in October 1995 constitute insurance premiums that are allowed to be carried back. (Appellee Br. at 22.) The IRS acknowledges that "[i]f the liability of the taxpayer requires a payment to another person and . . . arises under any workers compensation act, . . . economic performance occurs as the payments to such person are made." 26 U.S.C. § 461(h)(2)(C). It also recognizes that "[i]f the liability of a taxpayer arises out of the provision to the taxpayer of insurance, . . . economic performance occurs as payment is made to the person to which the liability is owed." 26 C.F.R. § 1.461-4(g)(5). The IRS argues, however, that only the premiums that Harvard paid to Wausau prior to 1995 should be treated as insurance premiums. (Appellee Br. at 23.)

The Bankruptcy Court found that pursuant to Wausau's retrospective insurance plans, "yearly premiums are based on the insured's actual loss experienced during the policy term." (Bankr. Op. at 3.) The court also found that, in addition to an initial premium charged at the beginning of the policy year, "Harvard was sometimes required to pay additional premiums based on the number of claims Wausau paid during the policy year." (*Id.* at 4.) According to the court, "Wausau routinely made these retrospective adjustments approximately six months after the end of policy years." (*Id.*) Although the Wausau plans required the payment of initial premiums, the IRS fails to identify any facts showing that the Bankruptcy Court was clearly erroneous in

7

characterizing the retrospective adjustments as additional premiums.  Based on the Bankruptcy Court's findings of fact concerning the nature of the retrospective adjustments at issue, which findings are not clearly erroneous, this Court determines that the Bankruptcy Court correctly concluded the payment of those adjustments "arises out of the provision to the taxpayer of insurance," such that those adjustments are allowed to be carried back.  26 C.F.R. § 1.461-4(g)(5).  For these reasons, this Court affirms the Bankruptcy Court's decision with respect to Harvard's retrospective adjustments during the 1995 tax year.

### 2.   Harvard's Payment of Administrative Expenses to Wausau

The Bankruptcy Court also addressed whether Harvard was allowed to carry back payments to Wausau for the administrative expenses of Harvard's plans.  The court found that "Wausau charged Harvard a premium expense for the administration of the plan."  (Bankr. Op. at 6.)  According to the court, "Wausau would apply a loss conversion factor to the paid losses and bill Harvard to cover claims adjusting expenses and the insurer's claim service."  (*Id.*)

The court reasoned that "[w]hile the expense are certainly related to the state law requirement that Harvard maintain workers' compensation insurance, Harvard had considerable discretion as to how to meet that requirement."  (*Id.* at 10.)  Although it acknowledged that "the charges were not optional and were charged by every insurer issuing retrospective insurance policies," the court noted that "[i]t was Harvard . . . who chose to comply with the law requiring workers' compensation insurance by entering into a contract with Wausau for a retrospective insurance policy."  (*Id.*)  The Bankruptcy Court concluded that "the administrative expenses charged by Wausau here were too attenuated to satisfy the 'arising under' standard of 26 U.S.C.

§ 172(f)(1)(B)." (*Id.*)

The Bankruptcy Court erred in concluding that the administrative expenses do not constitute a "specified liability loss" that may be carried back. The expenses were paid pursuant to workers compensation insurance policies provided by Wausau to Harvard. As discussed above, premiums paid by a taxpayer for workers compensation insurance may constitute a "specified liability loss" because they "aris[e] under a Federal or State law." *See* 26 U.S.C. § 461(h)(2)(C) (stating that "[i]f the liability of the taxpayer requires a payment to another person and . . . arises under any workers compensation act, . . . economic performance occurs as the payments to such person are made"); 26 C.F.R. § 1.461-4(g)(5) (stating that "[i]f the liability of a taxpayer arises out of the provision to the taxpayer of insurance, . . . economic performance occurs as payment is made to the person to which the liability is owed"). *See also* 26 C.F.R. § 1.461-4(g)(8) (examples 5 to 7).

For the same reasons that premiums paid by a taxpayer for workers compensation insurance constitute "a liability arising out of a Federal or State law," 26 U.S.C. § 172(f)(1)(B), and a "liability of a taxpayer aris[ing] out of the provision to the taxpayer of insurance," 26 C.F.R. § 1.461-4(g)(5), the administrative expenses that Harvard paid to Wausau are also deductible. Like the insurance premiums that Harvard paid to Wausau, the administrative expenses were part of the price that Harvard agreed to pay for the workers compensation insurance that it purchased from Wausau. Like the insurance premiums, the amount of the administrative expenses charged by Wausau was calculated based on Harvard's expected or actual losses. Given the facts that the Bankruptcy Court found concerning those expenses – and which the parties do not challenge – there is no reason why the administrative fees should be

9

treated differently from insurance premiums.

In its decision, the Bankruptcy Court reasoned that Harvard had "considerable discretion" in deciding how to satisfy "the state law requirement that Harvard maintain workers' compensation insurance . . . ." (Bankr. Op. at 10.)  The court observed that "[i]t was Harvard . . . who chose to comply with the law requiring workers' compensation insurance by entering into a contract with Wausau for a retrospective insurance policy." (*Id.*)  According to the court, "[p]resumably other insurers and other types of insurance policies were available, but Harvard chose both Wausau and a retrospective policy" that charged administrative expenses. (*Id.*)

There is no meaningful difference, however, between the retrospective insurance policy payments that Harvard made (including the administrative expenses that it paid) and payments made pursuant to more typical insurance plans.  Under either payment scheme, the taxpayer is paying an agreed upon price that "arises out of the provision to the taxpayer of insurance."  26 C.F.R. § 1.461-4(g)(5).  As with its initial premiums and retrospective adjustments, Harvard's payment of Wausau's administrative expenses was part of the price that it paid for the workers compensation insurance that it purchased to comply with state law requirements.

In determining whether an insured can deduct its insurance payments, it does not matter whether the insurance provider separately charges for administrative expenses.  Insurance providers incur costs in administering their policies, and those costs, in turn, affect the prices that they charge for coverage.  Regardless of whether these administrative costs appear as separate charges, or indirectly increase the price of the premiums that the insurance provider charges, the payment of those charges constitute payments "aris[ing] out of the provision to the taxpayer of insurance."  26 C.F.R. § 1.461-4(g)(5).  The parties have not identified any statute or regulation

that prohibits the deduction of workers compensation insurance payments in the case of retrospective insurance policies, or in the case of insurance policies that separately charge for administrative expenses. For these reasons, the Court reverses the Bankruptcy Court's decision with respect to Harvard's payment of administrative expenses.

### C. Whether Harvard's Deduction Should be Reduced Because Doehler-Jarvis Was Not a Member of Harvard's Tax Group in the 1985 Tax Year

The Bankruptcy Court found that Harvard and several of its subsidiaries filed consolidated tax returns in both the 1985 and 1995 tax years. (Bankr. Op. at 11.) Doehler-Jarvis was one of the members of the 1995 Harvard consolidated group, but was not a member of the 1985 Harvard group. (*Id.*) As a member of the 1995 Harvard group, Doehler-Jarvis contributed 32.4% of the consolidated group's losses. (*Id.*) The court concluded that "any carry back losses should be offset by excessive amounts the IRS allowed Harvard to carry back on account on Doehler-Jarvis." (*Id.* at 13.)

According to Section 1.1502-79A(a)(1) of the regulations for consolidated groups:

> (i) If a consolidated net operating loss can be carried under the principles of section 172(b) and paragraph (b) of § 1.1502-21A to a separate return year of a corporation (or could have been so carried if such corporation were in existence) which was a member in the year in which such loss arose, then the portion of such consolidated net operating loss attributable to such corporation . . . shall be apportioned to such corporation . . . and shall be a net operating loss carryover or carryback to such separate return year; accordingly, such portion shall not be included in the consolidated net operating loss carryovers or carrybacks to the equivalent consolidated return.

The Trust argues that "[t]he Secretary's promulgation of the regulations under section 1.1502-21A and 1.1502-79A appears to have been arbitrary, capricious and contrary to sections 172(b)

11

and (f)." (Appellant Br. at 27.) It argues that "the regulations do not meaningfully prevent tax avoidance," but instead "undo the specified liability loss deduction Congress granted under section 172(b)." (*Id.* at 30.) According to the Trust, "none of Doehler Jarvis's net operating loss is attributable to the specified liability losses that Harvard sought to deduct." (*Id.* at 29.) It notes that "[t]he specified liability losses[] in question arose from other Harvard entities, all of whom were part of the consolidated group in 1985 or were at least in existence in the year and had a separate return to which the specified liability losses[] could be allocated." (*Id.*) The Trust argues that the loss allocation provisions – which are based on each member's share of the net operating loss – deprived the consolidated group of its entitled deductions because there is "no correlation between the members of the consolidated group that contribute losses and members that contributed specified liability losses." (*Id.* at 28.)

Contrary to the Trust's arguments, however, Section 1.1502-79A(a)(1) does not eliminate a taxpayer's entitlement to carrybacks for specified liability losses. For example, in cases where a corporation's net operating loss could have been carried back to its own separate return, Section 1.1502-79A(a)(1) apportions the loss to that corporation, rather than to the tax group filing the consolidated return. Moreover, in certain cases, the loss allocation provisions would permit a consolidated group to receive a larger carryback than if the loss was allocated based on specified liability losses. As the IRS points out, "[if] group members who were present in the carryback year had <u>not</u> incurred specified liability expenses (but had otherwise incurred losses), the group would still have been apportioned a pro rata share of the 10-year carryback," and "the application of the apportionment regulations would have benefitted the group." (Appellee Br. at 20 (emphasis in original).)

The Trust has failed to demonstrate that the loss allocation provisions of the consolidated regulations are "arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837, 844 (1984).  The Court therefore affirms the Bankruptcy Court's decision with respect to the reduction of the carryback losses by Doehler-Jarvis's allocable share.

**III.   CONCLUSION**

For these reasons, the Bankruptcy Court's October 20, 2006 decision is affirmed in part and denied in part.  An appropriate form of order is filed herewith.

Dated:  June 4, 2007

        s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.